**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| MATTHEW RUMPING, | : | |
| *Plaintiff*, | : | Case No. 1:25-cv-845 |
| vs. | : | Judge Jeffery P. Hopkins |
| HIXSON HOLDINGS, INC., | : | |
| *Defendant*. | : | |

## OPINION AND ORDER

Plaintiff Matthew Rumping ("Rumping" or "Plaintiff") brings this putative class action against Defendant Hixson Holdings, Inc. ("Hixson" or "Defendant"). Before the Court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 11). For the following reasons, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

Plaintiff's Amended Complaint (Doc. 9) contains the following allegations.[1] Defendant Hixson is an architecture, engineering, and project management firm. Am. Compl., Doc. 9, ¶ 1. Plaintiff Rumping is a former employee of Hixson. *Id.* ¶ 43. As a condition of employment with Hixson, Rumping provided certain personal identifiable information ("PII") to Hixson. *Id.* The PII provided included information such as Rumping's name, social security number, birth date, address, phone number, and banking information.

---

[1] This matter is before the court on a motion to dismiss. At this stage, the Court accepts the well-pleaded allegations as true. *Bassett v. Nat'l. Collegiate Athletic Ass'n.,* 528 F.3d 426, 430 (6th Cir. 2008).

*Id.* Additionally, Rumping also provided Hixson with his family members' PII, as was necessary to use the health insurance provided by Hixson. *Id.*

On November 5, 2024, Hixson "detected a cybersecurity incident on its computer network." *Id.* ¶ 17. An investigation of the incident revealed that PII "was accessed and acquired by unauthorized third parties." *Id.* ¶ 18. Hixson completed its investigation of the data breach a year later, on October 9, 2025, and informed affected individuals on October 31, 2025. *Id.* ¶ 22.

Rumping claims that, because of the data breach, he incurred fraudulent charges on his checking account in March and September of 2025. *Id.* ¶ 52. He has also experienced "a significant uptick in spam calls, messages, and emails." *Id.* ¶ 53. Rumping also claims that in addition to time and money spent monitoring his accounts, he suffered anxiety and fear caused by the knowledge that his and his family's PII had been stolen by hackers. *Id.* ¶ 58.

Based on these events, Rumping filed suit against Hixson on November 18, 2025. Doc. 1. Hixson moved to dismiss the complaint on February 2, 2026. Doc. 7. Rumping filed an Amended Complaint on February 23, 2026. Am. Compl., Doc. 9.

The Amended Complaint contains three counts. *Id.* Count One alleges negligence. *Id.* ¶¶ 74–85. Count Two claims breach of implied contract. *Id.* ¶¶ 86–93. Finally, Count Three alleges unjust enrichment. *Id.* ¶¶ 94–100. Rumping brings these claims on behalf of himself as well as a proposed putative class of "all persons who entrusted Defendant with [PII] who were impacted" in the November 5 data breach. *Id.* ¶ 1.

In turn, Hixson moved to dismiss the Amended Complaint on March 13, 2026 for failure to state a claim. Doc. 11. Rumping opposed the motion, and Hixson filed a response to Rumping's opposition. Docs. 13, 15. The Motion to Dismiss is now ripe for review.

## II. STANDARD OF REVIEW

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This, however, requires "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Indeed, under the plausibility standard set forth in *Twombly* and *Iqbal*, courts play an important gatekeeper role, ensuring that claims meet a plausibility threshold before defendants are subjected to the potential rigors (and costs) of the discovery process. "Discovery, after all, is not designed as a method by which a plaintiff discovers whether he has a claim, but rather a process for discovering evidence to substantiate plausibly-stated claims." *Green v. Mason*, 504 F. Supp. 3d 813, 827 (S.D. Ohio 2020).

In deciding a motion to dismiss, the district court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007). In doing so, the district court "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby County,* 220 F.3d 433, 446 (6th Cir. 2000).

## III. LAW AND ANALYSIS

Before reaching the merits of the Motion to Dismiss, the Court briefly notes that it has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), ("CAFA"). Generally, federal courts have jurisdiction over two types of cases: those which involve a federal question, and those in which there is both complete diversity of citizenship between the parties and the requisite amount in controversy. *See Nessel ex rel. Mich. v. AmeriGas Partners, L.P.*, 954 F.3d 831, 834 (6th Cir. 2020); 28 U.S.C. § 1331; 28 U.S.C. § 1332(a). However, Congress enacted CAFA "to relax the requirements of diversity jurisdiction in order to make it easier for plaintiffs to bring certain interstate class actions and mass actions in federal court." *Nessel*, 954 F.3d at 834. Under CAFA, federal courts have jurisdiction over class actions "when (1) there is minimal diversity of citizenship between the parties; (2) the aggregate amount in controversy exceeds $5 million; and (3) the proposed class contains at least 100 members." *Id.* (citing 28 U.S.C. § 1332(d)(2) – (6)).

Plaintiff's allegations in the Amended Complaint satisfy these requirements. *See* Am. Compl., Doc. 9; *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007) ("[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction."). Here, there is minimal diversity of citizenship among the parties named in the suit and the putative class,[2] the putative class

---

[2] Plaintiff Rumping resides in Ohio. Am. Compl., Doc. 9, ¶ 8. Defendant Hixon is incorporated in Ohio and maintains its principal place of business in Ohio. *Id.* ¶ 9. Although Rumping and Hixson are non-diverse, "[CAFA] requires diversity between only any putative class member and any defendant." *Hudson-Swoope v. MRO Corp.*, 773 F. Supp. 3d 546, 555 (N.D. Ohio 2025). Therefore, because the Amended Complaint alleges that "at least one member of [the putative class] is a citizen of a different state that is diverse from Defendant's citizenship," CAFA's minimal diversity requirement is satisfied. Am. Compl., Doc. 9, ¶ 10.

exceeds 100 members, and the amount in controversy purportedly exceeds $5,000,000. Am. Compl., Doc. 9, ¶ 10.

Having established that the Court has jurisdiction under CAFA, we turn now to the merits of the Motion to Dismiss. Rumping's Amended Complaint asserts three claims: negligence (Count One, Am. Compl., Doc. 9, ¶¶ 74–85), breach of implied contract (Count Two, *id.*, ¶¶ 86–93), and unjust enrichment (Count Three, *id.*, ¶¶ 94–100).

**A. Negligence**

In Ohio,[3] to succeed on a negligence claim, "a plaintiff must show the existence of a duty, a breach of that duty, and an injury that was proximately caused by the breach." *Rieger v. Giant Eagle, Inc.*, 2019-Ohio-3745, ¶ 10.

Consider duty. The Supreme Court of Ohio has stated that "the duty element of negligence may be established by common law, by legislative enactment, or by the particular circumstances of a given case." *Wallace v. Ohio Dept. of Commerce*, 2002-Ohio-4210, ¶ 23. Moreover, "the concept of duty in negligence law is at times an elusive one." *Id.* As the Court further explained, duty "refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff." *Id.* At bottom, the concept of duty rests squarely upon the shoulders of foreseeability of harm; "if a reasonably prudent person would have anticipated that an injury was likely to

---

[3] Both Rumping and Hixson cite primarily to Ohio court cases. Thus, the parties seem to agree that Ohio law governs this case. Because neither party identifies a conflict, and because "courts routinely decline to decide complicated choice-of-law issues at the pleading stage," the Court will apply Ohio law where relevant in this ruling. *Munger v. Matco Tools Corp.,* No. 5:23-cv-00337, 2026 WL 1223399, at *4 (N.D. Ohio May 5, 2026) (quoting *Stinson v. Yum Brands, Inc.*, No. 3:23-cv-183, 2025 WL 2755879, *19 (W.D. Ky Aug. 29, 2025)); *see also Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1014 (6th Cir. 2003) (declining to conduct a choice of law analysis where the parties seem to agree that Ohio law governs the case).

result from a particular act, the court could find that the duty element of negligence is satisfied." *Id.*

Rumping claims that Hixson's "duty of care arose because of the special relationship that existed between [Hixson] and its employees and customers." Am. Compl., Doc. 9, ¶ 79. But "even absent a special relationship," Plaintiff argues that "Defendant had a duty to prevent foreseeable harm that occurred because of a risk that it created." *Id.* Plaintiff maintains that Hixson created an unreasonable risk of foreseeable harm by collecting and storing PII without adequate security protections. *Id.*

Hixson refutes these claims by contesting the existence of any duty and the foreseeability of the data breach. Doc. 11, PageID 99–101; Doc. 15, PageID 149.

The Court finds that the Amended Complaint plausibly alleges the existence of a duty. The Complaint states that at the time of the data breach, Rumping was an employee of Hixson. Am. Compl., Doc. 9, ¶ 46. While generally, "there is 'no duty to act affirmatively for the protection of others,' certain special relationships impose an affirmative duty to protect." *In re Bon Secours Mercy Health Data Breach Litig.*, No. 1:24-cv-594, 2025 WL 1827804, at *9 (S.D. Ohio July 2, 2025) (quoting *Jackson v. Forest City Ent., Inc.*, 111 Ohio App.3d 283, 285 (8th Dist. 1996)).

Relevant to this discussion, Ohio state courts have not explicitly recognized that an employer has a duty to protect employees' PII from a data breach. *In re Bon Secours*, 2025 WL 1827804, at *9. However, other courts—including this one—have held that the employer-employee relationship imposes a common law duty to protect PII from misuse. *See e.g., In re Bon Secours*, 2025 WL 1827804, at *9; *Savidge v. Pharm-Save, Inc.*, No. 3:17-cv-186, 2025 WL 964446, at *8 (W.D. Ky. Mar. 31, 2025) (collecting cases). Further, even absent an employer-

employee relationship, courts have found that businesses have a general common law duty to protect any PII they collect. *In Re Union Home Mortgage Corp. Data Breach Litigation*, No. 1:25-cv-1874, 2026 WL 2902245, at *9 (N.D. Ohio Sep. 28, 2026) (collecting cases). In line with these cases, the Court finds that here, the Amended Complaint plausibly alleges that Hixson had a common law duty to take reasonable measures to protect the PII it collected from Plaintiff.

Having found that a duty of care exists, the Court turns to whether the Amended Complaint plausibly alleges a breach of that duty. It does.

Plaintiff states that Defendant breached its duty by collecting and storing PII in a way that was susceptible to unauthorized access. Am. Compl., Doc. 9, ¶ 80. Plaintiff claims that Defendant failed to maintain adequate security measures to protect the PII from theft. *Id.* These claims are sufficient to meet the *Twombly* and *Iqbal* plausibility standard. *See In re CBIZ Data Breach Litig.*, No. 1:24-cv-1722, 2025 WL 1557033, at *7 (N.D. Ohio June 2, 2025) (finding allegations that PII was improperly stored sufficient to establish breach of the duty of care).

The final element necessary to state a claim for negligence in Ohio is "an injury that was proximately caused by the breach." *Rieger*, 2019-Ohio-3745, at ¶ 10.

Plaintiff claims that as a result of the data breach, he experienced fraudulent charges on his checking account as well as a "significant uptick in spam calls, messages, and emails." Am. Compl., Doc. 9, ¶¶ 52–53. These allegations are sufficient to allege causation at this stage because there is a "foreseeable nexus" between the leak of PII and fraudulent charges and spam communications. *Tate v. EyeMed Vision Care, LLC*, No. 1:21-cv-36, 2023 WL 6383467, at *7 (S.D. Ohio Sep. 29, 2023). "That is to say, the allegations in the [Amended Complaint]

plausibly establish a causal nexus between the exposed PII and the resultant increase in scam calls: one reasonably follows from the other." *Tate*, 2023 WL 6383467, at *7. Accordingly, Plaintiff has plausibly alleged causation.

Finally, Defendant argues that Plaintiff's negligence claim fails because the Amended Complaint alleges only economic injuries which, in Defendant's perspective, are barred from recovery in tort under the economic loss doctrine. Doc. 11, PageID 101.

"The economic-loss rule generally prevents recovery in tort of damages for purely economic loss." *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 2005-Ohio-5409, ¶ 6. "This rule stems from the recognition of a balance between tort law, designed to redress losses suffered by breach of a duty imposed by law to protect societal interests, and contract law, which holds that 'parties to a commercial transaction should remain free to govern their own affairs.'" *Id.* (quoting *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d 40, 42 (1990)).

Nonetheless, the economic loss doctrine is not "a blanket prohibition on the recovery of any 'economic losses' under Ohio tort law." *In re CBIZ*, 2025 WL 1557033, at *8. Here, because Plaintiff has "plausibly alleged a common-law duty owed to [him] independent of any contractual duty, . . . the economic loss doctrine is inapplicable." *In re Union Home*, 2026 WL 2902245, at *10; *see also In re Ohio Marijuana Card*, 2026 WL 2634838, at *18–20 (recognizing "an obvious tension" in courts' application of the economic-loss doctrine, but concluding that "the dispositive question is whether the duty owed is covered by a contract or whether the duty owed is independent of a contract"). It is important to stress here that Rumping asserts in the Amended Complaint that, in addition to time and money spent monitoring his accounts, he suffered anxiety and fear caused by the knowledge that his and

his family's PII had been stolen by hackers. Am. Compl., Doc. 9, ¶ 58. Plaintiff's claims for damages resulting from alleged anxiety and fear qualify as noneconomic harm under Ohio law and they are therefore not barred by the economic loss doctrine. The economic loss doctrine does not preclude recovery for fear and anxiety because the alleged fear is based on an "allegation that Plaintiff fear[s] . . . some quantifiable physical loss." *In re CBIZ*, 2025 WL 1557033, at *8 (quoting *Foster v. Health Recovery Servs., Inc.*, 493 F. Supp. 3d 622, 638 (S.D. Ohio 2020)).

Plaintiff plausibly alleges all three elements for a negligence claim under Ohio law. Accordingly, the negligence claim survives Defendant's 12(b)(6) motion to dismiss.

**B. Breach of Implied Contract**

Count Two of the Amended Complaint is for breach of implied contract. Am. Compl., Doc. 9, ¶¶ 86–93. In Ohio, a plaintiff must demonstrate "'offer, acceptance, consideration, and a meeting of the minds'" to succeed on a breach of implied contract claim. *In re Union Home*, 2026 WL 2902245, at *10 (N.D. Ohio Sept. 28, 2026) (quoting *Foster*, 493 F. Supp. 3d at 640)).

Rumping claims that in exchange for "[PII], payments, and/or labor, Defendant was required to provide Plaintiff and Class Members with employment, goods, and/or services." Am. Compl., Doc. 9, ¶ 88. "[I]mplicit in the agreement," Rumping argues, "Defendant was required to adequately protect Plaintiff's and Class Members' [PII] from foreseeable threats." *Id.* These obligations arose "because of independent implied agreements, or pursuant to the implied duty of good faith and fair dealing." *Id.* ¶ 89.

"It is difficult to imagine how, in our day and age of data and identity theft, the mandatory receipt of Social Security numbers or other sensitive personal information would

not imply the recipient's assent to protect the information sufficiently." *In re Bon Secours*, 2025 WL 1827804, at *11. "In line with that observation, numerous courts have found an implied contract exists where a plaintiff alleges that she was required to turn over PII to obtain employment or a type of service." *Id.* (collecting cases).

Plaintiff alleges that as a condition of employment, he was required to provide his PII to Defendant. Am. Compl., Doc. 9, ¶ 87. Implicit in this agreement was Defendant's assent to safeguard that information. *Id.* ¶ 88. This is sufficient at the pleading stage for the breach of implied contract claim to survive.

**C. Unjust Enrichment**

Plaintiff's third and final claim is for unjust enrichment. "A successful claim of unjust enrichment requires a showing that (1) a benefit was conferred by the plaintiff on the defendant, (2) the defendant had knowledge of the benefit, and (3) the defendant retained the benefit under circumstances in which it was unjust to do so without payment." *Bunta v. Superior VacuPress, L.L.C.*, 2022-Ohio-4363, ¶ 36.

"Lower courts in the Sixth Circuit have tended to find a plausibly conferred benefit in either of two instances: where the plaintiff alleged that the value of data security was factored into the price they paid the defendant, and where the plaintiff alleged that the defendant independently profited off of plaintiff's PII." *In re Union Home*, 2026 WL 2902245, at *11 (collecting cases). Neither circumstance exists in this case.

Plaintiff here presents two theories as to how he and class members conferred a benefit upon Hixson. Am. Compl., Doc. 9, ¶¶ 95–96. Neither theory is persuasive.

First, Rumping alleges that he and class members "conferred a benefit upon Defendant by providing Defendant with their private information." *Id.* ¶ 95. This fails. "Plaintiffs'

personal information does not confer a benefit." *In re Bon Secours,* 2025 WL 1827804, at *12 (citing *Haney v. Charter Foods N., LLC*, 747 F.Supp.3d 1093, 1113 (E.D. Tenn. 2024) (collecting cases)). And Rumping does not allege facts suggesting that Hixson gained some kind of monetary benefit *specifically* from the PII or in some other way profited from its use. *See Brooks v. Peoples Bank*, 732 F. Supp. 3d 765, 782 (S.D. Ohio 2024) (finding that plaintiffs' theory of unjust enrichment failed to state a claim where the complaint lacked specific allegations as to how defendant benefitted from the PII).

Here, the Amended Complaint alleges simply that "Plaintiff and Class Members conferred a benefit upon Defendant by providing Defendant with their [PII]" and that "Defendant should not be permitted to retain the full value of Plaintiff's and the Class Members' [PII] because Defendant failed to adequately protect [the PII]." Am. Compl., Doc. 9, ¶¶ 95, 98. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" cannot survive a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 678.

Rumping's second theory in support of the unjust enrichment claim argues that he and class members "also conferred a benefit upon Defendant in the form of their labor or their payments for goods and services." Am. Compl., Doc. 9, ¶ 96. This fails too. Hixson, in arguing the claim should be dismissed, posits that "[t]he Amended Complaint alleges that Plaintiff provided personal information in connection with Hixson's services and relationship with Plaintiff, but there is no allegation that Hixson failed to provide those services." Doc. 11, PageID 109. The Court agrees.

Absent allegations that Plaintiff and Class Members did not receive the expected services or employment from Defendant, there is no unaccounted-for benefit from the

provision of PII that would sustain an unjust enrichment claim. *See Tate*, 2023 WL 6383467, at *8 (finding plaintiffs' allegation that they conferred a monetary benefit on defendant through payments for vision benefits insufficient to support an unjust enrichment claim because "a traditional exchange of payments for goods and services is not a circumstance in which it is 'unjust' to allow the defendant the retain the benefit"). Accordingly, Rumping's unjust enrichment claim here is dismissed.

## IV. CONCLUSION

For the reasons stated, the Court **GRANTS IN PART** and **DENIES IN PART** Hixson's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 11). The motion is denied as to Plaintiff's negligence and breach of implied contract claims. The motion is granted as to Plaintiff's unjust enrichment claim. The Court accordingly dismisses the unjust enrichment claim, but **WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

November 23, 2026

Jeffery P. Hopkins
United States District Judge